THE HONORABLE BENJAMIN SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WASTE ACTION PROJECT, ) | |
| ) | No. 3:25-cv-05237-BHS |
| Plaintiff, ) | |
| v. ) | CONSENT DECREE |
| ) | |
| QUIGG BROS INC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### I.   STIPULATIONS

WHEREAS, Plaintiff Waste Action Project filed a complaint on March 19, 2025 (Dkt. 1) against defendant Quigg Bros., Inc. ("Quigg") alleging violations of the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, in relation to Quigg's heavy construction and water transportation facility located at or about 3701 Taylor Way, Tacoma, WA 98520 (the "Facility"), and any contiguous or adjacent properties owned or operated by Quigg, and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs.

WHEREAS, Waste Action Project and Quigg (collectively the "Parties") agree that settlement of these matters is in the best interest of the Parties and the public, and that entry of this

CONSENT DECREE No.
3:25-cv-05237-BHS 1

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Consent Decree is the most appropriate means of resolving this action.

WHEREAS, the Parties stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding Waste Action Project's claims or allegations set forth in its complaint and its sixty-day notice.

DATED this 28th day of May, 2025

QUIGG BROS., INC.

By _____
Charles Quigg
Vice President

WASTE ACTION PROJECT

By _____
Greg Wingard
Executive Director

## II.  ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the Parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. This Court has jurisdiction over the Parties and subject matter of this action.

2. Each signatory for the Parties certifies for that Party that he or she is authorized to enter into the agreement set forth herein and to legally bind the Party or Parties, their successors in interest, and assigns.

3. This Consent Decree applies to and binds the Parties and their successors and assigns.

4. This Consent Decree and any injunctive relief ordered within applies to Quigg's operation and oversight of the Facility.

CONSENT DECREE No.
3:25-cv-05237-BHS 2

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

5.     This Consent Decree is a full and complete settlement and release of all the claims in Waste Action Project's complaint and the preceding sixty-day notice letter, and all other claims known or unknown that exist as of the date of entry of the Consent Decree that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operation of the Facility. Upon termination of this Consent Decree, these claims are released and dismissed with prejudice. Quigg's payment of attorney's fees and litigation costs set forth in Paragraph 9 of the Consent Decree will be in full and complete satisfaction of any claims Waste Action Project and Smith & Lowney, PLLC have or may have, either legal or equitable, known or unknown, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in relation to this lawsuit. Enforcement of this Consent Decree is Waste Action Project's exclusive remedy for any violation of its terms.

6.     This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Waste Action Project in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of Quigg or its members, employees, agents, affiliates, contractors, customers, or other third parties. Quigg agrees to the terms and conditions identified in Paragraphs 7–9 in full and complete satisfaction of all the claims covered by this Consent Decree:

7.     Upon entry of the Consent Decree, Quigg will implement the following injunctive relief:

a.     Quigg will adhere to the terms and conditions of its Industrial Stormwater General Permit ("ISGP"), as may be modified, renewed, and/or amended by the Washington State Department of Ecology ("Ecology").

b.     No later than 10 days after entry of the Consent Decree, the Parties will

request a meeting that includes the Parties and their respective counsel, and attend such if the request is granted, with Ecology's Industrial Stormwater General Permit Writer Shannon McClellan, Vessel Deconstruction General Permit Writer Eric Daiber, and Water Quality Program Manager David Giglio to discuss whether the Vessel Deconstruction General Permit is required for the Facility. The Parties will submit a joint request to Ecology that the meeting be scheduled at a mutually agreeable time to occur within thirty (30) days of entry of the Consent Decree.

  c. Quigg will comply with the terms of any other National Pollutant Discharge Elimination System ("NPDES") permit for which Quigg applies and receives coverage at the Facility.

  d. Quigg will, on a monthly basis, provide written reports to Waste Action Project that identify: (i) progress towards obtaining a Vessel Deconstruction Permit to the extent Ecology determines that a Vessel Deconstruction Permit is required for Quigg's operations, (ii) status of compliance with consent decree, and (iii) copies of all communications with Ecology.

  e. Quigg will comply with ISGP Condition S7 concerning conducting and documenting monthly visual inspections of the Facility by qualified personnel including inspection components required by Condition S7.B and recording of results in an inspection report as required by Condition S7.C.

  f. Quigg will comply with ISGP Condition S9.C concerning submitting complete and accurate Annual Reports no later than May 15th of each year and including the documentation and information required by Condition S9.C.2-3.

CONSENT DECREE No.
3:25-cv-05237-BHS 4

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

g. Beginning no later than the date of entry of the Consent Decree, any time any Ecology personnel requests entry to the Facility to perform an inspection, Quigg will comply with the requirements of ISGP Condition G3 including allowing the authorized representative to enter the premises, have access to records, inspection the Facility, and sample for purposes of assuring permit compliance.

h. Within sixty (60) days of entry of the Consent Decree, Quigg will conduct a walk-through of its Facility to identify which areas of pavement require repair, and it will repair all remaining damaged pavement.

i. Beginning no later than the date of entry of the Consent Decree, Quigg will: (i) run its vacuum sweeper over entire surface of the Facility that is accessible by sweeper at least once weekly, (ii) hand sweep areas of the Facility that are inaccessible by the vacuum sweeper at least once weekly, and (iii) run a contracted sweeper around the Facility at least once quarterly. These requirements apply during periods when the Facility is active, and do not apply when the Facility is inactive (as defined in ISGP Appendix 2).

j. Beginning with the first full calendar quarter following entry of the Consent Decree, and for a period of four (4) consecutive quarters, Quigg will sample at least once per month at all stormwater sampling location(s). Such sampling will occur only if the Facility experiences one or more discharges per month at the designated sampling location during normal business hours ("qualifying storm event") in accordance with the ISGP. After the period of four (4) consecutive quarters, Quigg will sample as set forth in the ISGP.

k. Within sixty (60) days of entry of the Consent Decree, Quigg will purchase

catch basin inserts for each and every catch basin within Quigg's leased portion of the Facility. Upon receipt of the purchased catch basin inserts, Quigg will install the same as soon as practicable.

    l.    If Quigg triggers a Level Three Corrective Action under ISGP Condition S8.D, Quigg will:

        i.    Install engineered stormwater treatment in accordance with Ecology approval;

        ii.    Not request any waiver from Ecology or an extension of more than one year;

        iii.    Provide Waste Action Project with a copy of its engineering report for the engineered stormwater treatment at the same time it is submitted to Ecology. Waste Action Project may provide comments on the engineering report to Quigg within forty-five (45) days of receipt of the report. Within thirty (30) days of receipt of Waste Action Project's comments, Quigg will either adopt Waste Action Project's comments or respond in detail, in writing to each comment, explaining why any of Waste Action Project's comments were not adopted. Quigg will pay $5,000 for Waste Action Project to conduct this process with assistance of a consultant and counsel.

    m.    Within thirty (30) days of entry of the Consent Decree, Quigg will update its Stormwater Pollution Prevention Plan as follows:

        i.    Update the site map to depict the location of all structural source control

CONSENT DECREE No.
3:25-cv-05237-BHS 6

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

    BMPs including depicting the locations and extent of all onsite berming and the location where cleaning operations are performed.

  ii. Correct either the section 4.1.3 description of sampling points or site map to ensure both are accurate.

n. No later than the date of entry of the consent decree, Quigg's consultant, Anchor QEA, will consult with Waste Action Project's consultant, Dr. Richard Horner, on Quigg's behalf regarding adding mandatory BMPs from 2024 Stormwater Management Manual for Western Washington ("SWMMWW") to its SWPPP and will add required BMPs to the SWPPP within thirty (30) days thereafter.

8. Payment to Environmentally Beneficial Projects: Within thirty (30) days of entry of this Consent Decree, Quigg will pay $85,500 (EIGHTY-FIVE THOUSAND FIVE HUNDRED DOLLARS) to the Rose Foundation for use solely for projects that benefit water quality in the Hylebos Waterway and Inner Commencement Bay watersheds, as described in <u>Exhibit 1</u> to this Consent Decree. All such payments must adhere to the following restrictions on the use of funds:

 a. The Rose Foundation shall not fund any litigation of Clean Water Act citizen suits.

 b. Because Quigg's Tacoma facility exists within the Puyallup-White River Watershed, the Rose Foundation shall only use funds to support projects intended to improve the water quality of the Puyallup-White River Watershed and surrounding area. Furthermore, the Foundation shall work with community partners to select projects that benefit not only the watershed, but also neighborhoods and communities adversely impacted by environmental

CONSENT DECREE No.
3:25-cv-05237-BHS 7

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

degradation in Puyallup-White River Watershed.

    c. After complete disbursement of funds, the Rose Foundation shall send a report to the Justice Department, the Court, and the Parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

The check will be made to the order of Rose Foundation and delivered to: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Payment will include the following references in a cover letter or on the check: "Consent Decree, Waste Action Project v. Quigg Bros Inc., W.D. Wash. No. 3:24-cv-06012-LK, Tacoma." Quigg will send a copy of the checks and cover letters, if any, to Waste Action Project and its counsel, pursuant to the notice provisions in Paragraph 18.

    9. Within ten (10) days of entry of this Consent Decree, Quigg will pay $56,000 (FIFTY SIX THOUSAND DOLLARS) to cover Waste Acton Project's litigation fees, expenses, and costs (including reasonable attorneys and expert witness fees) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Alyssa Koepfgen.

    10. A force majeure event is any event outside the reasonable control of Quigg that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that Quigg timely notifies Waste Action Project of the event, the steps that Quigg will take to perform the task, the projected time that will be needed to complete the task, and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

11. Quigg will notify Waste Action Project of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after Quigg becomes aware of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include

    a.    Acts of God, war, insurrection, or civil disturbance;

    b.    Earthquakes, landslides, fire, or floods;

    c.    Actions or inactions of third parties over which Quigg has no or limited control;

    e.    Restraint by court order or order of public authority; and

    f.    Strikes.

12. This Court retains jurisdiction over this matter while this Consent Decree remains in force. While this Consent Decree remains in force, this case may be reopened without filing fees so that the Parties may apply to the Court for any further order that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the Parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting will be held as soon as practical but must be held within thirty (30) days after notice of a request for such a meeting to the other Party and its counsel of record. If no resolution is reached at that meeting or within thirty (30) days of the Notice, either Party may file a motion with this Court to resolve the dispute. In the event that the dispute is put before the Court for resolution, the prevailing or substantially prevailing party will be entitled to its reasonable attorneys' fees and litigation costs.

13. The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency ("EPA"). Therefore, upon the filing of this Consent Decree by the parties, Waste Action Project will serve copies of it upon the Administrator of the U.S. EPA and the U.S. Attorney General.

14. This Consent Decree will take effect upon entry by this Court. The Consent Decree terminates three (3) years after the date of entry.

15. Both Parties have participated in drafting this Consent Decree.

16. This Consent Decree constitutes the entire agreement between the Parties. There are no other or further agreements, either written or verbal. This Consent Decree may be modified only upon a writing signed by both Parties and the approval of the Court.

17. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either Party. The Parties agree to continue negotiations in good faith to cure any objection raised by the Court to entry of this Consent Decree.

18. Notifications required by this Consent Decree must be provided via email. For a notice or other communication regarding this Consent Decree to be valid, it must be sent to the receiving Party at the one or more email addresses listed below or to any other address designated by the receiving Party in a notice in accordance with this paragraph.

CONSENT DECREE No.
3:25-cv-05237-BHS 10

SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

**If to Waste Action Project**:

Greg Wingard
Waste Action Project
gregWAP@earthlink.net

**And to**:

Alyssa Koepfgen
Katelyn Kinn
Smith & Lowney PLLC
alyssa@smithandlowney.com
katelyn@smithandlowney.com

**If to Quigg:**

Charles Quigg
Quigg Bros., Inc.
CharlieQ@quiggbros.com

**And to:**

Tisha Pagalilauan
Hayley Barton
Cascadia Law Group PLLC
tpagalilauan@cascadialaw.com
hbarton@cascadialaw.com

Any party identified in the notice provisions above may affect a change in the notice address by providing a notice complying with these provisions to all other parties listed. A notice or other communication regarding this Consent Decree will be effective the day it is transmitted. An email is effective the day it is sent so long as it is sent by 5 pm and on a business day, or else it is effective the following business day.

DATED this 17th day of July, 2025.

_____
HON. BENJAMIN SETTLE
UNITED STATES DISTRICT JUDGE

Presented by:

CASCADIA LAW GROUP PLLC

By: */s/Tisha Pagalilauan*
Tisha Pagalilauan, WSBA #28217
Christopher Berven, WSBA #62951
*Attorneys for Quigg Bros., Inc.*

SMITH & LOWNEY, PLLC

By: */s/Alyssa Koepfgen*
Alyssa Koepfgen, WSBA #46773
By: */s/Katelyn Kinn*
Katelyn Kinn, WSBA #42686
*Attorneys for Plaintiff Waste Action Project*

# Exhibit 1



**201 4TH STREET, SUITE 102**
**OAKLAND, CALIFORNIA 94607**
**TELEPHONE 510.658.0702**

May 22, 2025

Bryn Bowen, Paralegal Specialist
United States Department of Justice
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re: Waste Action Project v. Quigg Bros, Inc.  (*Case No.: No. 3:25-cv-05237-BHS*)

Dear Ms. Bowen,

This letter is intended to provide assurance that I have received the Consent Decree between the above parties, and that I am authorized by my Executive Director and Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from Defendant as specified in the Consent Decree.
2) The Rose Foundation shall not fund any litigation of Clean Water Act citizen suits.
3) Because Quigg's Tacoma facility exists within the Puyallup-White River Watershed, the Rose Foundation shall only use funds to support projects intended to improve the water quality of the Puyallup-White River Watershed and surrounding area. Furthermore, the Foundation shall work with community partners to select projects that benefit not only the watershed, but also neighborhoods and communities adversely impacted by environmental degradation in Puyallup-White River Watershed.
4) The Rose Foundation shall not use the funds for any direct political lobbying activities as defined by the IRS.
5) After funds are dispersed, the Rose Foundation shall send a report to the Justice Department and the Settling Parties setting forth the recipient and purpose of the funds and demonstrating conformance with the nexus of the Consent Decree.

**Rose Foundation for Communities and the Environment**

The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

- Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not support political lobbying activities prohibited by Section 501(c)(3) of the IRS Code.

rosefdn.org



- Work directly in schools and in the community to encourage environmental stewardship and civic participation.
- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.
- Protect the natural environment, public health, and consumer rights.
- Promote collaboration between labor, environmental, business, consumer and social interests.
- Cultivate a new generation of environmental stewards and social policy leaders.
- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors. Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then make recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Maze and Associates are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require. Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or jisaacs@rosefdn.org.

Sincerely,

*Jodene Isaacs*

Jodene Isaacs
Director of Grantmaking